IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CV-226-FL

ALLISON LINDLEY BRIGHT,               )
                                      )
              Plaintiff,              )
                                      )
       v.                             )          **MEMORANDUM AND**
                                      )          **RECOMMENDATION**
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social Security, )
                                      )
              Defendant.              )

In this action, plaintiff Allison Lindley Bright ("plaintiff") challenges the final decision

of defendant Acting Commissioner of Social Security ("Commissioner") denying her application

for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not

disabled. The case is before the court on the parties' motions for judgment on the pleadings

(D.E. 19, 26). Both filed memoranda in support of their respective motions (D.E. 20, 27) and

plaintiff filed a reply (D.E. 29). The motions were referred to the undersigned Magistrate Judge

for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E.

dated 28 May 2014). For the reasons set forth below, it will be recommended that the

Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the

Commissioner be affirmed.

I.     **BACKGROUND**

       A.     **Case History**

       Plaintiff filed an application for DIB on 30 October 2009 alleging the onset of disability

on 22 March 2008. Transcript of Proceedings ("Tr.") 24. The application was denied initially

and upon reconsideration, and a request for hearing was timely filed. Tr. 24. On 8 May 2012, a

hearing was held before an Administrative Law Judge ("ALJ"). Tr. 38-75. The ALJ issued a decision denying plaintiff's claim on 29 June 2012. Tr. 24-37. Plaintiff timely requested review by the Appeals Council. Tr. 20. On 24 August 2013, the Appeals Council denied the request for review. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 23 October 2013, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

### B.     Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C.    Findings of the ALJ

Plaintiff was 45 years old on the alleged onset date of disability and 49 years old on the date of the hearing. *See* Tr. 35 ¶ 7; 43. She has at least a high school education and past relevant work as a registered nurse, as well as a court stenographer. Tr. 35 ¶¶ 6, 8.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 22 March 2008, the date of the alleged onset of disability. Tr. 26 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease with herniation at the L5-S1 level; bilateral carpal tunnel syndrome; right knee hemarthrosis; status post left rotator cuff injury with residual pain; migraine headaches; decreased hearing in the left ear; posttraumatic stress disorder; anxiety; and depression. Tr. 26 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 26 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform work at the sedentary level.[1] Tr. 28 ¶ 5; *see* 20 C.F.R. § 404.1567(a). He found, however, that plaintiff's capacity was subject to the following limitations:

> Occasional climbing of stairs and ramps; occasional balancing, stooping, crawling, kneeling and crouching; should never climb ladders, ropes or scaffolds and should avoid occupations with hazardous machinery and exposure to vibrations due to her prior knee surgery, bleeding and previous back injury. The claimant would require the use of an assistive devise (i.e. cane) for ingress and egress only, and would require a sit/stand option, but would not be off tasks, and could work in occupations where the employee could sit and/or stand while performing the employer's tasks. The claimant can have frequent, but not constant fingering, grasping and holding bilaterally, and only occasional overhead

---

[1] Title 20 C.F.R. § 404.1567(a) defines sedentary as work "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Similarly, the *Dictionary of Occupational Titles* ("DOT") defines sedentary work as

> [e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

DOT (U.S. Dep't of Labor 4th ed. rev. 1991), app. C § IV, def. of "S-Sedentary Work," http://www.oalj.dol.gov/libdot.htm (last visited 24 Oct. 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

reaching with the left (non-dominant) hand. The claimant should work in a low production, low stress occupation with no complex decision making, constant change or dealing with crisis situations, and should have only occasional contact with the general public due to anxiety.

Tr. 28 ¶ 5. At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 35 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of addresser, callout operator, and document preparer. Tr. 36 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 36 ¶ 11.

###    D.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.

1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.     OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the case should be remanded for the award of benefits or, in the alternative, a new hearing, on the principal grounds that the ALJ erred by: (1) failing to evaluate her back impairment under Listing 1.04A; (2) improperly evaluating the medical opinions of internist Rupert W. Jilcott, III, M.D., one of her treating physicians; and (3) improperly evaluating her credibility. Each ground is examined in turn below.

## III.    DISCUSSION

### A.      ALJ's Listing Determination

Plaintiff contends that the ALJ failed to compare the criteria of Listing 1.04A to the facts of the case and to find that plaintiff met or medically equaled the criteria. The court finds no error.

The Listings describe impairments, organized into sections corresponding to major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Most body system sections contain an introduction followed by the

listings of specific impairments. *Id.* (c)(1). The introduction contains information relevant to use of the listings of specific impairments, possibly including definitions and some of the criteria for particular impairments. *See id.* (c)(2). Each listing of a specific impairment sets forth all the criteria, or most of them if some are set out in the introduction, for that particular impairment. *See id.* (c)(3).

If a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing and the claimant thereby deemed to be disabled if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1520(d), 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

Listing 1.04A provides as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.

With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

Listing 1.04A.

Here, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Tr. 26 ¶ 4. He explained his determination, in relevant part, as follows:

The claimant does not have the gravity of symptoms nor medical documentation necessary to establish an impairment of listing level severity. Further, no treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity; however, the undersigned has considered the medical listings, specifically listings 1.00 and 2.00 for the claimant's alleged physical complaints, but does not find the presence of any criteria set forth in said listings to warrant a finding that the claimant meets or equals any listing.

Tr. 27 ¶ 4.

Contrary to plaintiff's contention, the ALJ's decision adequately shows that he considered Listing 1.04A, even though he does not expressly mention it. The ALJ's general finding that plaintiff's impairments do not meet or medically equal any listing, of course, encompasses Listing 1.04A. More significantly, the ALJ states expressly that he considered "the medical listings, specifically *listings [sections]*[2] *1.00* and 2.00 for the claimant's alleged physical complaints." Tr. 27 ¶ 4 (emphasis added).

---

[2] The ALJ's finding that the criteria set forth in "listing[] 1.00" were not met or equaled makes clear that "listing[] 1.00" refers to section 1.00 of the Listings (for the musculoskeletal system) and not simply the introduction to that section (*i.e.*, Listing 1.00), because the introduction does not include criteria for Listing 1.04. Instead, the introduction provides definitions and other information regarding application of Listing 1.04 as well as other listings of specific impairments. *See, e.g.*, Listing 1.00E2, 1.00K, 1.00K2b, 1.00K4. Moreover, given the nature of the information in the introduction, it would be pointless simply to review it and not the listings of specific impairments included in Listings section 1.00 (*i.e.*, Listings 1.02 to 1.08).

Moreover, the ALJ provided an explanation for his determination. As noted, he explained that plaintiff "does not have the gravity of symptoms nor medical documentation necessary to establish an impairment of listing level severity," that "no treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity," and, specifically with respect to Listings section 1.00, that he "does not find the presence of any criteria set forth in said listings to warrant a finding that the claimant meets or equals any listing." Tr. 27 ¶ 4. The ALJ subsequently, as part of his RFC analysis, presents a detailed discussion of the medical evidence, including the medical opinions, spanning about six pages. *See* Tr. 29-35 ¶ 5. The fact that this discussion follows the listing determination does not detract from its relevance to that determination because the ALJ's decision must be read as a whole. *See, e.g.*, *Manning v. Colvin*, No. 4:12–CV–204–D, 2013 WL 2617351, at *6 (collecting cases), *mem. & recomm. adopted by* 2013 WL 2617351, at *1 (E.D.N.C. 11 June 2013); *see also McCauley v. Colvin*, No. 7:12–CV–311–D, 2013 WL 7098724, at *9 (13 Dec. 2013) (finding that the ALJ's determination on Listing 1.04A and B was adequately supported by subsequent RFC analysis) (citing *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *3 (E.D.N.C. 23 Feb. 2009)), *mem. & recomm. adopted by* 2013 WL 7098724, at *1 (E.D.N.C. 28 Jan. 2014)). This discussion substantiates the ALJ's determination that plaintiff's back impairment did not reach listing-level severity.

The ALJ first notes that plaintiff initially sought treatment for her back in April 2008, after she purportedly injured it in March 2008 while attempting to lift and reposition a heavy patient. Tr. 29 ¶ 5. She saw orthopedic surgeon David A. Rockwell, M.D., who prescribed physical therapy. Tr. 29 ¶ 5. An MRI in June 2008 showed a disc herniation, but Dr. Rockwell found plaintiff capable of light work with no bending or twisting. Tr. 30 ¶ 5.

As the ALJ then discusses, plaintiff began treatment with orthopedic surgeon Scott E. Reeg, M.D. in August 2008 and continued with him until February 2009. Tr. 30 ¶ 5. The ALJ notes that under Dr. Reeg's care plaintiff lacked demonstrable weakness or reflex abnormalities, and had significant relief from pain with steroidal injections, and that he found her capable of sedentary work:

> Dr. Reeg evaluated the claimant in August 2008 and noted she ambulated with a stable gait, could heel/toe walk and had equivocal straight leg raising with no demonstrable weakness or reflex abnormalities. After discussing various treatment options, Dr. Reeg recommended the claimant undergo a series of lumbar steroid injections, but stated she could return to sedentary work. After a series of three steroid injections, the claimant returned to Dr. Reeg in November 2008. He noted the claimant was doing well and reported excellent results following the steroid injections with significant relief of her pain. Dr. Reeg again stated the claimant could perform sedentary, perhaps even light exertional type work. In February 2009, Dr. Reeg noted the claimant had declined surgical intervention and stated she had reached maximum medical improvement. He discharged the claimant from his care and assessed her with a 6% permanent partial disability rating for workers' compensation purposes (Exhibits 1F, 2F and 4F).

Tr. 30 ¶ 5.

The ALJ notes that plaintiff then saw neurosurgeon Keith A. Tucci, M.D. in June 2009 for her back. Tr. 30 ¶ 5. Although he recommended an updated MRI and possible surgery depending on its results, the ALJ found that there is no evidence that plaintiff obtained the MRI or returned to Dr. Tucci for further treatment. Tr. 30 ¶ 5.

The ALJ explains that plaintiff next sought treatment for her back about 18 months later in January 2011 from neurologist James Bryan Cooper, M.D. Tr. 31 ¶ 5. His treatment of her lower back was limited to pain medication. *See* Tr. 489 (prescribing Lortab for back pain "when severe"). As the ALJ's discussion indicates, his treatment of plaintiff focused on her migraines and neck pain. Tr. 31 ¶ 5. Plaintiff last saw Dr. Cooper in February 2012. *See* Tr. 525.

In the meantime, in September 2011, plaintiff sought treatment for her back from Dr. Jilcott after a fall caused by her knee giving out. Tr. 31 ¶ 5. As detailed in the next section below, although Dr. Jilcott found in April 2012 that plaintiff's back impairment was disabling, the ALJ found that this opinion was "not consistent with the totality of the evidence or his own treatment records." Tr. 33 ¶ 5. The ALJ stated specifically that "[i]n April 2012, Dr. Jilcott noted no joint deformity or abnormalities and noted a normal range of motion for the claimant's age. He found no extremity edema and no sensory deficits (Exhibit 35F)." Tr. 33 ¶ 5. The ALJ went on to find that plaintiff "has refused surgical intervention and continues to receive ongoing medication management; however, there is no evidence of record to suggest that she would be limited beyond the modified sedentary residual functional capacity assessed herein." Tr. 34 ¶ 5.

The paucity, if not complete absence, of evidence supporting one particular criterion of Listing 1.04A—that nerve root compression be characterized by "motor loss (atrophy with associated muscular weakness or muscle weakness) accompanied by sensory or reflex loss"—provides further support for the ALJ's determination regarding that listing. In her reply memorandum, plaintiff cites to only four pages of medical records as showing that this criterion is met or equaled. Review of these records shows that they make no such showing.

For example, in the note of an office visit with plaintiff on 27 May 2008, Dr. Rockwell found that "[t]oe extension is a *little* weaker on the left than the right but *there is no focal numbness.*" Tr. 275 (emphasis added). The note does not otherwise indicate sensory or reflex loss accompanying the minimal weakness found.

The note of plaintiff's 18 June 2009 office visit with Dr. Tucci states that "[h]er motor strength is grossly symmetric" and "[m]otor strength is full." Tr. 281. Dr. Tucci also found her

reflexes to be "1+ throughout"[3] and that her sensory exam was "intact to pinprick and light touch." Tr. 281.

In his note on his 22 February 2012 office visit plaintiff, Dr. Cooper stated that his clinical examination showed "ill-defined numbness throughout the leg." Tr. 525. There is no mention of weakness. In the note of his 26 August 2011 visit with plaintiff, Dr. Cooper had found that although plaintiff stated she "had been getting somewhat numb while driving," she "has no current objective sensory loss in the lower extremities." Tr. 494.

The remaining record, dated 24 December 2009, is from a physical therapy provider and entitled "Plan of Care." Tr. 325. The "Assessment" section of the form contains the finding that plaintiff "continues with motor deficit and strength loss" and noted "moderate loss of proprioception[4]." While these findings do indicate motor weakness accompanied by sensory loss, the record relates to plaintiff's right knee and a prior injury to it, not her back.[5]

In light of the evidence of record relating to Listing 1.04A, the court finds that the ALJ made sufficiently clear the reasons for his determination that plaintiff did not meet or medically equal it. *See* McCauley, 2013 WL 7098724, at *9; *Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted) (cited in *McCauley*, 2013 WL 7098724, at *9). In any event, because of the lack of

---

[3] The figure "+1" refers to the strength of the reflex. *See* N.Y. University School of Medicine, Deep Tendon Reflexes, https://informatics med.nyu.edu/modules/pub/neurosurgery/reflexes.html (last visited 24 Oct. 2014). Depending on the circumstances of the particular patient, such a rating may be deemed to be in normal range, albeit at a diminished level, particularly when the rating applies uniformly to the patient. *Id.*

[4] Proprioception refers to the sense of relative position of parts of the body. *See* MedicineNet.com, http://www.medicinenet.com/script/main/art.asp?articlekey=6393 (last visited 24 Oct. 2014).

[5] The physician who referred plaintiff for physical therapy was orthopedic surgeon Christopher M. Barsanti, M.D., who was treating her for her knee as well as shoulder problems, as the ALJ discussed. Tr. 30-31 ¶ 5.

evidence of motor loss accompanied by sensory or reflex loss, precluding a determination that plaintiff met or equaled Listing 1.04A, any error by the ALJ with respect to his explanation of his determination on Listing 1.04A was harmless. *See Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7, 7 (M.D.N.C. 14 Aug. 2013).

Plaintiff argues that the ALJ was required to set out a criterion-by-criterion evaluation of the applicability of Listing 1.04A to this case, citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). There, the Fourth Circuit found that the ALJ's cryptic statements that he considered Listing 1.04A, among other listings, and that the state medical examiner concluded that no listing was not met or equaled did not provide a sufficient basis upon which to evaluate the ALJ's determination. *Id.* The court found that a full explanation by the ALJ was particularly important because of probative evidence that the plaintiff did meet or equal that listing, alluding to the "depth and ambivalence of the medical record." *Id.* at 295, 296. The court accordingly remanded the case for further proceedings before the Social Security Administration. *Id.* at 296.

Here, unlike in *Radford*, the ALJ did provide a substantive explanation for his listing determination, and that explanation was supplemented by his subsequent, detailed discussion of the medical evidence in his RFC analysis. Moreover, the record does not include evidence indicating that plaintiff might well meet or medically equal Listing 1.04A. Indeed, the contrary is true.

The court concludes that plaintiff's challenge to the ALJ's determination regarding Listing 1.04A is meritless. It should accordingly be rejected.

### B.   ALJ's Evaluation of Dr. Jilcott's Opinions

Plaintiff saw Dr. Jilcott on four occasions over an eight-month period for her back disorder:  (1) 6 September 2011 (Tr. 496-98); (2) 23 November 2011 (Tr. 573-75); (3) 1 March 2012 (Tr. 576-78); and (4) 17 April 2012 (Tr. 579-81).[6]  On the date of the last visit, Dr. Jilcott completed a "Residual Functional Capacity Questionnaire" on plaintiff.  (Tr. 561-64)  In it, he found plaintiff to have limitations that precluded her from working.  As summarized by the ALJ, Dr. Jilcott found as follows:

> He stated that he had been treating the claimant since September 2011 for low back pain with radiation of pain into both legs. Dr. Jilcott stated the claimant could occasionally lift 10 pounds, and could sit, stand and/or walk for less than two hours in an eight-hour workday with an assistive device. Further, he stated the claimant could occasionally climb stairs, but never climb ladders, and could occasionally twist, stoop, bend, crouch, and squat. In addition, Dr. Jilcott noted the claimant would have some problems grasping, turning and twisting objects with her hands due to carpal tunnel syndrome, and that her frequent pain would interfere with her attention and concentration. He further opined that the claimant was unable to work (Exhibit 32F).

Tr. 33 ¶ 5.  The ALJ gave Dr. Jilcott's opinions less than full weight.  Tr. 33 ¶ 5.  Plaintiff contends that the ALJ erred in doing so.  The court finds no error.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled.  *See id.* § 404.1527(b), (c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b),

---

[6] Related laboratory records are located at Tr. 582-86.

416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion."). Where there are multiple opinions from a single source, an ALJ does not necessarily have to discuss each opinion separately to make clear the weight given it and the underlying reasons. *See* Soc. Sec. R. 96-2p, 1996 WL 374188, at *2.

The opinions of physicians and psychologists on issues reserved to the Commissioner, that is, legal conclusions, are not entitled to special weight because of their source, including statements that the claimant is disabled or unable to work. 20 C.F.R. § 404.1527(d)(1), (3). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, at *3 (2 July 1996).

Here, the ALJ indicated the weight he gave Dr. Jilcott's opinions and the reasons for it. As to Dr. Jilcott's statements that plaintiff is disabled, the ALJ explained that he rejected them completely, invoking in part the authorities cited immediately above:

> Dr. Jilcott's statements that the claimant cannot work . . . [are] given no weight. Opinions on such issues are administrative findings, requiring familiarity with the Social Security Regulations and legal standards set forth therein, and are specifically reserved for determination by the Commissioner of Social Security (20 CRF 404.1527; SSR 96-5p). Further, these statements are neither diagnostic in nature nor are they indicative of the claimant's ability or inability to perform work-related activities.

Tr. 33 ¶ 5.

> With respect to Dr. Jilcott's other opinions, the ALJ stated:

> While Dr. Jilcott's opinion is given some weight, as he does have a treating relationship with the claimant, it is not given significant weight as his opinion is not consistent with the totality of evidence or his own treatment records.

Tr. 33 ¶ 5. The ALJ goes on to give an example of the inconsistency of Dr. Jilcott's opinions with his own records:

> In April 2012, Dr. Jilcott noted no joint deformity or abnormalities and noted a normal range of motion for the claimant's age. He found no extremity edema and no sensory deficits (Exhibit 35F).

Tr. 33 ¶ 5. The final reason the ALJ cites for the weight he gave Dr. Jilcott's opinions is the conservative treatment plaintiff received. Tr. 33 ¶ 5.[7]

---

[7] The ALJ stated, "*As with Dr. Jilcott*, Dr. Yongue's opinion is given little weight as it simply is not supported by the conservative treatment received by the claimant." Tr. 33 ¶ 5 (emphasis added).

Substantial evidence supports the reasons cited by the ALJ. This evidence includes the evidence discussed by the ALJ.

For example, with respect to the conservative nature of the treatment plaintiff received, it did not include surgery, but was limited primarily to medication and occasional steroid injections. As to the inconsistency of Dr. Jilcott's opinions with the totality of the evidence, supporting evidence includes that relating to the records of Drs. Rockwell, Reeg, Tucci, and Cooper, as previously discussed.

Regarding the inconsistency of Dr. Jilcott's records with his opinions, in his September 2011 office visit with plaintiff, he found no back or spine abnormalities and no motor or sensory deficits (Tr. 497); and in each of the subsequent visits, in November 2011, March 2012, and April 2012, he again found no motor or sensory deficits (Tr. 575, 578, 581). While plaintiff points to information in these records purportedly supporting Dr. Jilcott's opinions, that information does not negate the inconsistencies presented.

Plaintiff also cites to the record of other physicians who treated plaintiff as supporting Dr. Jilcott's opinions. Again, though, his opinions are inconsistent with other portions of these records. For example, the 11 June 2008 treatment note of Dr. Rockwell found plaintiff capable of doing "light to moderate duty work." Tr. 274. Similarly, the 19 August 2008 treatment note of Dr. Reeg continued plaintiff on a sedentary work restriction, finding her to have a stable gait and no demonstrable weakness, or sensory or reflex abnormalities. Tr. 264-65. Dr. Reeg subsequently terminated his care of her, finding she could return to light work. Tr. 254, 255. On 18 June 2009, while Dr. Tucci found that conservative treatment had failed plaintiff and that her back condition "completely" interferes with her activities of daily living and occupation, he also recommended that plaintiff update her MRI to determine whether there were changes with

respect to her disc herniation, there is no evidence that she did so, and she did not seek further treatment for back pain until January 2011, when she began treatment with Dr. Cooper. *See* Tr., *e.g.*, 30 ¶ 5; 281, 489.

Plaintiff further cites to physical therapy records. Tr. 325-27; 332, 534, 549. But these include records from April and May 2008 (Tr. 534, 549), in the immediate aftermath of her injury, before Dr. Reeg discharged her to light duty work in February 2009 (Tr. 254, 255) and long before Dr. Jilcott issued his opinions in 2012. The other physical therapy notes plaintiff cites relate to her right knee and left shoulder impairments, not her back, which is the subject of Dr. Jilcott's opinions. *See* Tr. 325-27, 332.

While not giving Dr. Jilcott's opinions great weight, it is apparent that the ALJ gave them some weight, as he stated. His RFC determination reflects many of the same limitations found by Dr. Jilcott, although obviously to a lesser degree of severity.

The court concludes that plaintiff's challenge to the ALJ's evaluation of Dr. Jilcott's opinions fails. It should therefore be rejected.

### C.     ALJ's Assessment of Plaintiff's Credibility

Plaintiff testified that her physical and mental impairments render her unable to work. *See, e.g.*, Tr. 29. The ALJ found that plaintiff's statements regarding her impairments were not fully credible. Plaintiff argues that the ALJ erred in making this finding. The court disagrees.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n.1; 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are

consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 32 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment and supporting medical evidence." Tr. 32 ¶ 5.

Contrary to plaintiff's contention that the ALJ did not explain his credibility ruling, he did, stating:

> While the claimant may indeed have some functional limitations associated with her physical impairments, the [RFC] assessed herein accommodates these limitations. The claimant has refused surgical intervention and continues to receive ongoing medication management; however, there is no evidence of record to suggest that she would be limited beyond the modified sedentary residual functional capacity assessed herein. Although the claimant stated she became depressed after her March 2008 injury, there is no evidence that she sought any type of mental health treatment from a qualified professional until three years later. Dr. Yongue prescribed medication and noted the claimant had a good response. In April 2012 Dr. Jilcott noted the claimant had no unusual anxiety or evidence of depression present. Dr. Rice noted Cymbalta had greatly helped the claimant's reported crying spells (see also Exhibits 19F, 25F-28F, 31F, 34F and 35F). While the undersigned does not mean to imply that the claimant does not experience some degree of symptomologies secondary to her impairments, her

statements regarding their intensity, persistence and limiting effects are not entirely credible and the evidence of record simply does not support a finding of 'disabled'.

Tr. 34 ¶ 5. As to his RFC determination, which, as indicated, the ALJ found accommodated plaintiff's credible limitations, he elaborated that it "is supported by the evidence of record as a whole, including the level of care the claimant has received, as well as the clinical and diagnostic findings of record." Tr. 35 ¶ 5. The court finds the ALJ's explanation supported by substantial evidence, including the evidence discussed in detail in his decision, much of it reviewed herein. *See* Tr. 29-35 ¶ 5.

It is apparent that, while not fully crediting plaintiff's statements regarding her limitations, he did give them some weight. As noted, the ALJ's RFC determination restricted her to only a limited range of sedentary work. The limitations reflected in the RFC are responsive to many of the limitations alleged by plaintiff.

In support of her challenge to the ALJ's credibility determination, plaintiff relies on a case from the Seventh Circuit condemning an ALJ's reliance on a boilerplate statement regarding a claimant's credibility. *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). Not only is this case not binding in this circuit, but it is factually distinguishable. The ALJ in the instant case did not simply rely on boilerplate language regarding plaintiff's credibility. As discussed, he provided specific reasons for his determination relating to the particular claimant in the instant case.

The court concludes that plaintiff's challenge to the ALJ's credibility determination is meritless. It should accordingly be rejected along with plaintiff's other challenges to the ALJ's decision.

**IV. CONCLUSION**

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 26) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 19) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 7 November 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after filing of the objections on the responding party.

This, the 24th day of October 2014.

James E. Gates
United States Magistrate Judge